UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, CDCR #AH-1995,<br><br>Plaintiff,<br><br>vs.<br><br>Dr. MICHAEL BALBIN SANTOS, Primary Care Provider; CALIFORNIA CORR. HEALTH CARE SERVICES; DANIEL PARAMO, Warden; CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION,<br><br>Defendants. | Case No.: 3:18-cv-02391-BTM-WVG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**2) DISMISSING DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)**<br><br>**3) PROVIDING NOTICE OF TRO AND DIRECTING DEFENDANT SANTOS TO RESPOND [ECF No. 3]**<br><br>**AND**<br><br>**4) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANT SANTOS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Raul Arellano ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, on October 18, 2018. *See* Compl., ECF No. 1 at 1. Plaintiff did not pay the filing fee required by 28 U.S.C. § 1914(a) at the time

of filing; instead, he filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2), together with a Motion for a Temporary Restraining Order ("TRO") (ECF No. 3).

I. **Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by an accounting officer at RJD. *See* ECF No. 2 at 3-4; ECF No. 4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show that Plaintiff has carried an average monthly balance of $.66 and has had $.59 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint; but he had no available money on the books at the time of filing. *See* ECF No. 4 at 1.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $.13 pursuant to 28 U.S.C. § 1915(b)(1). Because he had no available balance at the time of filing, however, the Court will direct the Acting Secretary of the CDCR, or his designee, to collect the initial $.13 filing fee assessed only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

II. **Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

A. <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these

statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

///
///
///

B. Plaintiff's Allegations[2]

Plaintiff suffers from hypertension, diabetes, epileptic seizures, and "ongoing pain" due to neuropathy and nerve damage to his head and lower back caused by an "excessive force incident" in 2010, a fall from his bunk during a seizure in 2012, and a suicide attempt in April 2018. *See* Compl., ECF No. 1 at 3; Decl. in Supp. of TRO, ECF No. 3 at 2-3. For these ailments, from 2011 through 2015, Plaintiff claims to have been prescribed Keppra and Dilantin for the seizures, and various pain medications including Naproxen, Ibuprofen, Amitriptyline, and Sulindac, but he claims they caused "severe side effects" and were ineffective. *See* ECF No. 3 at 2.[3]

In late 2015, Plaintiff was prescribed Depakote and a "low dose" of Gabapentin, which he alleges is "for both pain/seizure[s]." *See* ECF No. 3 at 2. While he still suffered

---

[2] Plaintiff's Complaint provides a "summary" of his claimed constitutional violations, *see* Compl., ECF No. 1 at 3, but it incorporates by reference more detailed factual allegations included in a Declaration attached to his TRO. *Id.*; *see also* ECF No. 3 at 2-5. Accordingly, the Court will consider the facts alleged in Plaintiff's Declaration in determining whether he has stated a plausible claim upon which § 1983 relief may be granted. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[3] Plaintiff has filed eight other civil rights actions in the Southern District of California beginning in March 2014. *See* https://pcl.uscourts.gov/pcl/pages/search/results/parties.jsf?sid =88d746c5d19b4114946626b63dc0738b (last visited Nov. 14, 2018). Seven of those cases remain pending, and four of them contain Eighth Amendment inadequate medical care allegations similar to those alleged here. However, all of Plaintiff's previously filed claims arose years before the incidents at issue in this case, and all name different RJD doctors, nurses, and inmate appeals officials as Defendants. None appear duplicative of the claims Plaintiff alleges against Dr. Santos in this latest case, which Plaintiff contends first arose at RJD on September 25, 2018, and which remain "ongoing." *See* Compl., ECF No. 1 at 1, 3-4; *cf. Arellano v. Hodge, et al.,* S.D. Cal. Civil Case No. 3:14-cv-00590-JLS-JLB; *Arellano v. Sedighi, et al.*, S.D. Cal. Civil Case No. 3:15-cv-02059-AJB-BGS; *Arellano v. Melton, et al.*, 3:15-cv-02069-JAH-NLS; and *Arellano v. Dean, et al.*, 3:15-cv-02247-BEN-JLB.

seizures in 2016, Plaintiff noticed that as "they (different doctors) increased [the] Gabapentin," his seizures decreased in both frequency and severity. *Id.* By "May or so of 2017," Plaintiff was prescribed a 2700 mg dose of Gabapentin, which he contends "was controlling [his] seizures," and he "stayed on that level for a year." *Id.*

In April 2018, Plaintiff suffered a family tragedy and attempted suicide by cutting his wrists and "throwing" himself from a bunk "head first." *See* ECF No. 3 at 3. Plaintiff claims to have sustained a concussion, temporary blindness, and "permanent blurry vision" as a result, and was temporarily prescribed Tylenol with codeine for pain while he remained in the "suicidal infirmary." *Id.* After his release from the infirmary, Plaintiff was assigned to Dr. Santos. *Id.*

In May 2018, Plaintiff claims he told Dr. Santos of his medical and mental health history and reported the neck and wrist injuries he had just sustained as a result of his suicide attempt was so severe it was interfering with his ability to walk, exercise, breathe, and sleep. *Id.* Plaintiff reported the Gabapentin "seem[ed] to alleviate" these issues, so he requested an increased dosage because he had developed a tolerance to it, and his other pain meds were "ineffective" and caused side effects that "put [his] health and life at risk." *Id.*

Plaintiff contends Dr. Santos "said he didn't care what [Plaintiff] was going thr[ough]," and would decrease Plaintiff's dosage to 2400 mg instead. *Id.* Plaintiff further claims Dr. Santos stated that if he complained again, he would "take them all off," because Plaintiff was a "convict" and "c[ould not] be trusted." *Id.*

Plaintiff claims his pain continued, so he filed "another medical request." *Id.* On September 25, 2018, Dr. Santos examined Plaintiff, who told him he feared the increase in pain would trigger seizures. *Id.* But Dr. Santos "took [him] off" Gabapentin altogether, without a "justifiable reason," with "deliberate indifference," and without prescribing "other effective and adequate pain & seizure medication." *See* Compl., ECF No. 1 at 3; ECF No. 3 at 3. Plaintiff further alleges Dr. Santos "said he was taking [Plaintiff] off" the Gabapentin "due to [his] submitting [a] complaint about inadequate medical treatment."

*See* Compl. ECF No. 1 at 4.

Plaintiff claims to have suffered 5 seizures between September 25, 2018, and October 17, 2018, which he alleges is due to his "uncontrol[led] severe pain," and Dr. Santos' refusal to prescribe a sufficient dosage of Gabapentin. *See* ECF No. 1 at 3; ECF No. 3 at 4. He seeks $60,000 in damages based on alleged First and Eighth Amendment violations, and immediate injunctive relief requiring "2700 mg of Gabapentin" and to be "referred to another doctor." *Id.,* ECF No. 1 at 3-4, 6.

### C. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

### D. Improper Defendants

In addition to Dr. Santos, who Plaintiff claims acted under color of state law as his primary care provider at RJD, *see* Compl., ECF No. 1 at 2, Plaintiff also includes California Correctional Health Care Services ("CCHCS"), the California Department of Corrections and Rehabilitation ("CDCR"), and RJD's former Warden, Daniel Paramo, as Defendants. *Id.* But he includes no further mention of any of these purported parties in the body of either his Complaint or his TRO, and he and fails to include any "further factual enhancement" to show how, or to what extent, any of them may be held liable for any constitutional injury. *See Iqbal,* 556 U.S. at 676-77; *Jones v. Comm'ty Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

First, as to Warden Paramo, Plaintiff claims only that he "[i]s responsible for the prisoners to get adequate medical care." *Id.* at 2. But "vicarious liability is inapplicable to … § 1983 suits, [and] a plaintiff must plead that each Government-official defendant,

7

3:18-cv-02391-BTM-WVG

through [his] own individual actions, has violated the Constitution," in order to plead a plausible claim for relief. *Iqbal*, 556 U.S. at 676; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted).

Second, to the extent Plaintiff wishes to impose liability on state departments or agencies like the CDCR and CCHCS, they are immune from suit under the Eleventh Amendment. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); § 1915A(b)(2); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (holding that prisoner's Eighth Amendment claims against CDCR for damages and injunctive relief were barred by Eleventh Amendment immunity); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (Eleventh Amendment immunity extends to state agencies); *see also Cooksey v. California Corr. Health Care Servs.*, No. 2:16-CV-1282-JAM-EFB P, 2017 WL 1495164, at *3 (E.D. Cal. Apr. 26, 2017) (dismissing claims alleged against Defendants CDCR & CCHCS sua sponte pursuant to 28 U.S.C. § 1915A as barred by the Eleventh Amendment).

For these reasons, the Court dismisses Defendants Paramo, CDCR, and CCHCS as parties to this action sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii) and 28 U.S.C. § 1915A(b)(1), (2); *Lopez*, 203 F.3d at 1126-27; *Wilhelm*, 680 F.3d at 1121.

E. <u>Defendant Santos</u>

As to Plaintiff's allegations against Dr. Santos however, the Court finds his Complaint contains plausible First Amendment retaliation and Eighth Amendment inadequate medical care claims sufficient to survive the "low threshold" set to withstand the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (failure to protect claims under the Eighth Amendment require a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety."); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (to maintain an Eighth Amendment claim

based on medical care in prison, a prisoner must show deliberate indifference to his serious medical needs) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (quotation marks omitted); *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

Therefore, the Court will order the U.S. Marshal to effect service upon Defendant Santos on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); FED. R. CIV. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").[4]

///

---

[4] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007). However, the Court finds it is not "clear from the face of the complaint," whether Plaintiff has exhausted all "available" administrative remedies pursuant to 42 U.S.C. § 1997e(a). *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc); *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). While Plaintiff admits he is "proceeding right now through the 602 process," he also claims to face "[i]mminent danger" as a result of Dr. Santos's actions and requests immediate injunctive relief via a TRO to avoid "extreme damage to [his] health. *See* Compl., ECF No. 1 at 5. "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, __U.S. __, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738, (2001)). Therefore, because exhaustion is an affirmative defense, Defendant Santos "will have to present probative evidence ... 'to plead and prove' ... that [Plaintiff] has failed to exhaust" all available administrative remedies pursuant to Fed. R. Civ. P. 56, should he elect to defend on this basis. *Albino*, 747 F.3d at 1169 (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)).

9

## III. Motion for TRO

Finally, Plaintiff has filed an ex parte Motion for a Temporary Restraining Order (ECF No. 3), in which he requests that the Court order Dr. Santos to prescribe him *at least* 2700 mg of Gabapentin and to "add an upgrade to 3600 mg (the highest dosage) or add an additional pain reliever to minimize the high level of pain that [he] experience[s] between 8 p.m. and 9 a.m." *See* ECF No. 3 at 6.

### A. Standard of Review

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Plaintiffs seeking a TRO must provide written or oral notice to the party or parties potentially subject to a TRO unless the plaintiff seeking the TRO meets the requirements of Rule 65(b)(1)(A)-(B). *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1248 (E.D. Wash. 2017), *appeal dismissed as moot sub nom. Sanchez Ochoa v. Campbell*, 716 F. App'x 741 (9th Cir. 2018).

A court may only issue a TRO without notice to the adverse party if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The Supreme Court has held, "[e]x parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974). Ex parte TROs "may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (9th Cir. 1984)).

///

B.  Application to Plaintiff's Case

The Court notes this case is still in its preliminary screening stage, the United States Marshal has yet to effect service upon Dr. Santos on his behalf, and while Plaintiff has filed his TRO with the Clerk of the Court together with his Complaint, he has failed to satisfy Rule 65(b)(1)(B)'s notice requirements.

However, Plaintiff has set forth "specific facts in an affidavit or a verified complaint [to] clearly show that immediate and irreparable injury, loss, or damage will result" before Defendant Santos can be properly served and heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A). Specifically, Plaintiff claims the levels of medication provided by Dr. Santos are insufficient to control his seizures or pain, that he has already suffered three seizures between September 25, 2018, and October 8, 2018, as a result, and that his "life [is] at risk" because "everytime [he] ha[s] a seizure [he] [has] fallen" and hit his head on the concrete cell floor. *See* ECF No. 3 at 3-4.

Because the Court finds these allegations of potential harm and risk of injury serious and not merely speculative, *see Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674-75 (9th Cir. 1988), the Court hereby NOTIFIES the California Department of Justice Office of the Attorney General of Plaintiff's TRO and ORDERS that they file a brief written response to Plaintiff's claims of immediate and irreparable injury with respect to his current medical condition and medication status on Dr. Santos's behalf within 14 days of this Order. After the Court has reviewed that response, it will then issue a separate written Order with respect to Plaintiff's TRO, but no personal appearances will be required unless the Court orders otherwise. *See* S.D. Cal. CivLR 7.1.d.1.

IV. **Conclusion and Orders**

Based on the foregoing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

///

2. **ORDERS** the Acting Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $.13 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Acting Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Defendants California Correctional Health Care Services (CCHCS), Warden Daniel Paramo, and the California Department of Corrections and Rehabilitation (CDCR) as parties to this matter based on Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

5. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Dr. Michael Balbin Santos, and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for this Defendant. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint (ECF No. 1), and the summons so that he may serve Dr. Santos. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285 as completely and accurately as possible, *include an address where Dr. Santos may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

6. **ORDERS** the U.S. Marshal to serve a copy of the Complaint (ECF No. 1), and summons upon Dr. Santos as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

///

7. **ORDERS** Defendant Santos, once he has been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

8. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant Santos, or if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on Defendant or his counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendant, or his counsel, may be disregarded.

9. **NOTIFIES** the California Department of Justice, Office of the Attorney General, of Plaintiff's Motion for a TRO and **ORDERS** that they file a brief written response to Plaintiff's claims of immediate and irreparable injury with respect to his current medical condition and medication status on Dr. Santos's behalf **within 14 days of this Order**.

The Clerk of the Court is **DIRECTED** to serve a copy of Plaintiff's Complaint (ECF No. 1), his TRO (ECF No. 3), and this Order upon:

MONICA N. ANDERSON
 Senior Assistant Attorney General

13

3:18-cv-02391-BTM-WVG

California Department of Justice
Office of the Attorney General
1300 I Street
P.O. Box 944255
Sacramento, California 94244-2550

and

MICHELLE DES JARDINS
Supervising Deputy Attorney General
California Department of Justice
Office of the Attorney General
600 West Broadway Street, Suite 1800
San Diego, California 92101.

Upon receipt and review of Defendant's response to Plaintiff's Motion for a TRO, the Court will take the Motion under submission and issue a written Order in due course. No appearances will be required unless the Court orders otherwise. *See* S.D. Cal. CivLR 7.1.d.1.

**IT IS SO ORDERED**.

Dated: November 28, 2018

_____
Hon. Barry Ted Moskowitz, Chief Judge
United States District Court