UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, CDCR #AH-1995,<br><br>                              Plaintiff,<br><br>vs.<br><br>Dr. MICHAEL BALBIN SANTOS,<br><br>                              Defendant. | Case No.: 3:18-cv-02391-BTM-WVG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER PURSUANT TO Fed. R. Civ. P. 65**<br><br>**[ECF No. 3]** |

      Raul Arellano ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se and in forma pauperis, filed a Motion for Temporary Restraining Order ("TRO") together with his Complaint on October 18, 2018. *See* ECF No. 3.

      Because he failed to provide Dr. Santos with the notice required by Rule 65(b)(1), the Court directed the Clerk of the Court to notify the California Department of Justice, Office of the Attorney General ("OAG") of Plaintiff's TRO and ordered that it file a brief written response. *See* ECF No. 6 at 1, 13-14. On December 12, 2018, the OAG, specially appearing on behalf of Dr. Santos, filed an Opposition. *See* ECF No. 8.

      Having now carefully considered both Plaintiff's Motion for TRO and the sworn Declaration and exhibits submitted on behalf of Dr. Santos in Opposition, the Court DENIES Plaintiff's Motion (ECF No. 3) for the reasons explained below.

1

## I. Plaintiff's Allegations[1]

Plaintiff claims to suffer from hypertension, diabetes, epileptic seizures, and "ongoing pain" due to neuropathy and nerve damage to his head and lower back caused by an "excessive force incident" in 2010, a fall from his bunk during a seizure in 2012, and a suicide attempt in April 2018. *See* Compl., ECF No. 1 at 3; Decl. in Supp. of TRO, ECF No. 3 at 2-3. For these ailments, from 2011 through 2015, Plaintiff alleges he was prescribed Keppra and Dilantin for the seizures, and various pain medications including Naproxen, Ibuprofen, Amitriptyline, and Sulindac, but he contends they caused "severe side effects" and were ineffective. *See* ECF No. 3 at 2.

In late 2015, Plaintiff was prescribed Depakote and a "low dose" of Gabapentin, which he alleges is "for both pain/seizure[s]." *See* ECF No. 3 at 2. While he still suffered seizures in 2016, Plaintiff noticed that as "they (different doctors) increased [the] Gabapentin," his seizures decreased in both frequency and severity. *Id.* By "May or so of 2017," Plaintiff was prescribed a 2700 mg dose of Gabapentin, which he contends "was controlling [his] seizures," and he "stayed on that level for a year." *Id.*

In April 2018, Plaintiff suffered a family tragedy and attempted suicide by cutting his wrists and "throwing" himself from a bunk "head first." *See* ECF No. 3 at 3. He claims to have sustained a concussion, temporary blindness, and "permanent blurry vision" as a result, and was temporarily prescribed Tylenol with codeine for pain while he remained in the "suicidal infirmary." *Id.* After his release from the infirmary, Plaintiff was assigned to Dr. Santos. *Id.*

In May 2018, Plaintiff claims he told Dr. Santos of his medical and mental health history and reported the neck and wrist injuries he had just sustained as a result of his suicide attempt was so severe it was interfering with his ability to walk, exercise, breathe,

---

[1] Plaintiff's Complaint provides a "summary" of his claimed constitutional violations, *see* Compl., ECF No. 1 at 3, but it incorporates by reference more detailed factual allegations included in the Declaration he has attached to his TRO Motion.

2

and sleep. *Id.* Plaintiff reported the Gabapentin "seem[ed] to alleviate" these issues, so he requested an increased dosage because he had developed a tolerance to it, and his other pain meds were "ineffective" and caused side effects that "put [his] health and life at risk." *Id.*

Plaintiff contends Dr. Santos "said he didn't care what [Plaintiff] was going thr[ough]," and would decrease Plaintiff's dosage to 2400 mg instead. *Id.* Plaintiff further claims Dr. Santos stated that if he complained again, he would "take them all off," because Plaintiff was a "convict" and "c[ould not] be trusted." *Id.*

Plaintiff claims his pain continued, so he filed "another medical request." *Id.* On September 25, 2018, Dr. Santos examined Plaintiff, who told him he feared the increase in pain would trigger seizures. *Id.* But Dr. Santos "took [him] off" Gabapentin altogether, without a "justifiable reason," with "deliberate indifference," and without prescribing "other effective and adequate pain & seizure medication." *See* Compl., ECF No. 1 at 3; ECF No. 3 at 3. Plaintiff further alleges Dr. Santos "said he was taking [Plaintiff] off" the Gabapentin "due to [his] submitting [a] complaint about inadequate medical treatment." *See* Compl. ECF No. 1 at 4.

Plaintiff contends he suffered several seizures between September 25, 2018, and October 17, 2018, which he attributes to his "uncontrol[led] severe pain," and Dr. Santos' refusal to prescribe a sufficient dosage of Gabapentin. *See* ECF No. 1 at 3; ECF No. 3 at 4.

In his Complaint, he seeks $60,000 in damages based on alleged First and Eighth Amendment violations, and immediate injunctive relief requiring "2700 mg of Gabapentin" and to be "referred to another doctor." *See* ECF No. 1 at 3-4, 6.

In his TRO Motion, Plaintiff further requests that the Court order his Gabapentin "be increased to 3600 mg because that's the highest dosage there is," or that Dr. Santos be ordered to add "another type of pain medication on top of the 2700 mg" dose of Gabapentin previously prescribed. *See* ECF No. 3 at 5.

///

## II. Defendant Santos's Response

Dr. Santos, a physician and surgeon, has practiced medicine for twenty-three years, has been employed at RJD since 2015, and treated Plaintiff as part of his duties as RJD's C-yard physician from March 22, 2018, until October 25, 2018. *See* Def.'s Opp'n, Decl. of Dr. Michal Balbin Santos (hereafter "Santos Decl."), ECF No. 8-1 at 1-2, ¶¶ 1-2.

Dr. Santos attests that Plaintiff's medical records dating back to November 2017 show he was prescribed 2700 mg of Gabapentin,[2] administered in 900 mg increments, three times a day by Dr. Messler. *Id.* at 2 ¶ 3. Gabapentin was prescribed to treat Plaintiff's complaints of neuropathic pain, and not for his reported seizures. *Id.* Plaintiff was treated separately by a neurologist, Dr. Malhotra, who prescribed 500 mg of Depakote, three times a day for his "presumed seizures," for which Malhotra also noted Plaintiff had no "credible" medical or witnessed history. *Id.*; *see also* ECF No. 8-1, Ex. A at 7. Dr. Malhotra also noted he saw "no indication for Neurontin." *Id.*

Plaintiff continued on the 2700 mg daily dose of Gabapentin, however, he continued to complain of neck pain. *Id.* at 2 ¶ 4. On May 7, 2018, Dr. Santos prescribed an additional 1000 mg of Salsalate[3] twice a day, which was increased to three times daily on June 13, 2018, in response to Plaintiff's repeated reports of pain. *Id.* Because Plaintiff specifically complained of neuropathic pain at night, Santos decreased his total daily dose of Gabapentin to 2400 mg, but "spread out the dose … to 600 mg four times a day to provide Gabapentin coverage at night." *Id.* Dr. Santos claims Plaintiff "agreed with this plan," but he also noted Plaintiff's Medication Administration Record ("MAR") revealed he "never took" the Salsalate previously prescribed, and that he had "missed several

---

[2] Neurontin is the proprietary name for Gabapentin. *See* Santos Decl., ECF No. 8-1 at 2 ¶ 3.

[3] "Salsalate is used to relieve pain from various conditions. It also reduces pain, swelling, and joint stiffness from arthritis. This medication is known as a nonsteroidal anti-inflammatory drug (NSAID)." *See* https://www.webmd.com/drugs/2/drug-8704/salsalate-oral/details (last visited Dec. 17, 2018).

doses of Gabapentin" during the two weeks prior. *Id.* Dr. Santos "reminded [Plaintiff] to be compliant with [his] medications," and substituted the Salsalate for 500 mg of Naproxen on July 11, 2018, based on Plaintiff's complaints of dizziness—but he remained at a 2400 mg dosage of Gabapentin until September 25, 2018. *Id.* at 2-3, ¶ 4.

On September 14, 2018, Dr. Santos received a Health Care Services Request Form ("CDC 7362") from Plaintiff, in which he requested to see a doctor for leg and neck pain, reported as "severe of a level 10." *Id.* at 3 ¶ 5, *see also* Ex. B, ECF No. 8-1 at 9. Plaintiff also reported to experience numbness, insomnia, a "burning sensation," and "needle poking," and claimed to have "fallen with injur[ies]" due to pain. *Id.*

On September 25, 2018, Dr. Santos examined Plaintiff in response to his CDC 7362. *Id.* at 3 ¶ 6.[4] Santos also reviewed Plaintiff's MAR, which showed he "failed to take his prescribed Gabapentin dose" on twelve separate occasions during the three weeks prior—on "September 4, 8, 9, 12, 13, 14, 15, 16, 18, 19, 20, and 22." *Id.* A "further review of [Plaintiff's] medication record show[ed] [Plaintiff] … miss[ed] multiple doses every month," including multiple doses of Depakote—for which he "took the full prescribed dose for only 5 days on September 1, 6, 7, 13, and 21." *Id.* ¶ 9. In all, Dr. Santos attests Plaintiff had been "non-compliant since March 2018." *Id.* ¶ 6; *see also* ECF No. 8-1, Ex. C at 13. Based on his examination of Plaintiff, and his records, Dr. Santos "determined the risks of increasing [Plaintiff's] Gabapentin dosage, or even continuing with the medication, outweighed the benefits." *Id.* ¶ 6.

Specifically, Dr. Santos considered Plaintiff's non-compliance, his continued complaints of pain even when prescribed 2400 mg of Gabapentin, and the drug's side-effects, including increased "dizziness, ataxia, nystagmus, somnolence, and amnesia" in

---

[4] Dr. Santos's Outpatient Progress Notes, dated September 25, 2018, also indicate that "despite his complaint," Plaintiff presented as "ambulatory, with no assistive device. He walks with a normal steady gait, with no leg limp, and with a good posture. He doesn't show any signs of painful distress such as grimacing." *See* ECF No. 8-1 at 12.

light of Plaintiff's reports of having already fallen several times. *Id.* ¶¶ 6, 7. Dr. Santos also considered Plaintiff's ongoing complaints of intermittent vision loss, "for which no medial cause ha[d] been found," and for which Plaintiff refused to undergo an MRI, but which "could potentially be complicated by Gabapentin," as well as "the potential for dependency [which] increases with the duration and dosage …, especially in patients [like Plaintiff] with a history of substance abuse." *Id.* at ¶¶ 6-7.

Based on this analysis, Dr. Santos "began tapering [Plaintiff] from Gabapentin," "continued to prescribe 500 mg of naproxen, a non-steroidal anti-inflammatory drug," "added capasaicin topical cream for his neurological pain," and referred him for "Cognitive Behavioral Therapy and to the neurologist for further management regarding his pain complaints." *Id.* at 4 ¶ 8. Santos also "proposed that [Plaintiff] try Lyrica, an FDA approved medication for neuropathic pain," but he refused. *Id.*, *see also* ECF No. 8-1, Ex. C at 11-13.

After his prescription for Gabapentin was discontinued, Plaintiff "began filing numerous health care grievances," and "as standard procedure, Dr. Zhang provided a secondary review of [Plaintiff's] records, along with an in person exam." *See* ECF No. 8-1 at 4 ¶ 10. Dr. Zhang "prescribed a 900 mg daily dose of Gabapentin on October 9, 2018, for neuropathy, and incrementally increased it to 1800 mg where it remains today, under the supervision of the new C-yard physician Dr. Guldseth." *Id.* at 4-5, ¶ 10.

### III. Motion for TRO

#### A. Standard of Review

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014), *as amended* (Mar. 11, 2014) (citing *Winter*, 555 U.S. at 20)).

B. <u>Discussion</u>

In his TRO Motion, Plaintiff requests that the Court order that he be prescribed at least 2700 mg of Gabapentin, to "add an upgrade to 3600 mg (the highest dosage), or to "add an additional pain reliever … between 8 p.m. and 9 p.m." *See* ECF No. 3 at 6. Plaintiff argues that "the sever[ity] of [his] pain [by] itself [is] irreparable harm," because "if [he] [suffers] a seizure and ends up falling," he "can [be] permanently injured or lo[]se [his life." *Id.* He further contends he is likely to succeed on the merits of his Eighth Amendment claims because "courts … agree that a prisoner can show a serious medical need if the failure to treat a prisoner's condition could result in further significant injury." *Id.* at 7.

In response, Dr. Santos argues Plaintiff has failed to establish a likelihood of success on the merits of his Eighth Amendment inadequate medical care claims because his sworn Declaration, together with Plaintiff's own medical records, "show [he] has been treated with careful medical judgment, and that his lack of Gabapentin is not responsible for his alleged pain and seizures." *See* ECF No. 8 at 5-6.

The Court agrees that Plaintiff has failed to satisfy the *Winter* factors, and therefore is not entitled to the preliminary injunctive relief he seeks. *See Winter*, 555 U.S. at 20; *Wells Fargo*, 758 F.3d at 1071.

First, while Plaintiff's claims Dr. Santos "took [him] off Gabapentin altogether," and without prescribing "other effective and adequate pain & seizure medication," *see* Compl., ECF No. 1 at 3; ECF No. 3 at 3, his own medical records, as well as Defendant

7

Santos's Declaration do not substantiate those claims. *See* ECF No. 8-1 at 2-4 ¶¶ 4-9 & Exs. A-C. Specifically, Santos attests Plaintiff has continually been treated for both his complaints of pain and seizure with varying prescriptions and dosages of Gabapentin, Depakote, Salsalate, and naproxyn, was referred for Cognitive Behavior Therapy and to a neurologist, and was offered Lyrica and an MRI (both of which he refused) for the period spanning from November 2017 through September 25, 2018. *Id.* In addition, while *all* Plaintiff's treating physicians decided to taper his Gabapentin dosage, a 900 mg daily dose was renewed on October 9, 2018, and has since been increased to 1800 mg daily under RJD's current C-Yard physician, Dr. Gulseth, "where it remains today." *Id.* at 4-5 ¶¶ 9-10. Based on this record, the Court finds Plaintiff has alleged, but has not shown, that he currently faces "immediate and irreparable injury." *See* Fed. R. Civ. P. 65(b)(1); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Second, Plaintiff has failed to demonstrate he is likely to succeed on the merits of his Eighth Amendment inadequate medical care claim against Dr. Santos. A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To prevail on such a claim, the prisoner must demonstrate he was confined under conditions posing a risk of "objectively, sufficiently serious" harm, and that prison officials had a "sufficiently culpable state of mind" in denying him proper medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations

omitted); *Lopez v. Smith*, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc); *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain). Here, Plaintiff alleges, his records show, and Defendant does not dispute that he suffers from medical conditions sufficiently serious to satisfy the Eighth Amendment's objective requirements. *See Clement*, 298 F.3d at 904.

However, the Eighth Amendment's subjective component further requires Plaintiff to show that Dr. Santos acted with "'deliberate indifference' to a substantial risk of serious harm" when he decided the risk of a continued or increased Gabapentin prescription, given Plaintiff's complaints and medical history, outweighed its benefits. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.[5] "This is not an easy test for plaintiffs to satisfy," *Hallett v. Morgan*, 287 F.3d 1193, 1205 (9th Cir. 2002), and Plaintiff fails to show he is likely to succeed on the merits of a deliberate indifference claim here.

Specifically, Plaintiff admits he has been prescribed Keppra, Dilantin, and Depakote to treat his seizures as early as 2011, and that he was initially prescribed a "low dose" of Gabapentin, which he claims was "for both pain [and] seizures" and which he

---

[5] Indifference to medical needs also must be substantial; inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Hallett v. Morgan*, 287 F.3d 1193, 1205 (9th Cir. 2002); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). In other words, an "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot ... be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

believes "was controlling" them for more than a year, beginning in late 2015. *See* ECF No. 3 at 2. While he was prescribed both Depakote and an increased dose of Gabapentin, however, Plaintiff further admits to have still suffered neurological pain, described by him as a "level 10," to have experienced numbness, burning, and insomnia, to have "had several fall[s] with injuries," and to have attempted suicide. *See* ECF No. 3 at 3; ECF No. 8-1 at 9. Dr. Santos's Declaration and Plaintiff's medical records substantiate this history, his repeated complaints, and his treating physicians' continued efforts to address them. *See* ECF No. 8-1 at 7-14.

Ultimately, Plaintiff simply disagrees with Dr. Santos's medical assessment as to both the cause of his alleged seizures and the appropriate course of treatment. Plaintiff contends increased levels of Gabapentin controlled his seizures because it decreased his pain. *See* ECF No. 3 at 2. But Santos, his treating physician, determined that continued use of Gabapentin, given its potential side-effects, Plaintiff's repeated reports of pain even when prescribed the drug, his history of drug use, the potential for dependency, and his recorded failure to take Depakote, the medication specifically prescribed to address his reported seizures, was contraindicated. *See* ECF No. 8-1 at 2-4, ¶¶ 4-9.

As a matter of law, differences of opinion like these between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment do not amount to deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (finding claims that "Seroquel is superior to Triafon, and therefore should not have been discontinued," amounted to a mere "difference of medical opinion" which is "insufficient, as a matter of law, to establish deliberate indifference.") (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)); *see also Witherspoon v. Warner*, No. CV-12-5163-JPH, 2013 WL 3733495, at *3 (E.D. Wash. July 15, 2013) (denying injunctive relief where prisoner offered only conclusory allegations of need for opiates which had been denied as medically unnecessary based in part on his "high risk for opioid dependence and addiction," and because his doctors determined that risk "outweighed any potential benefit.").

To prevail on an Eighth Amendment claim involving choices between alternative courses of treatment, Plaintiff must demonstrate that the chosen course of treatment Dr. Santos prescribed "was medically unacceptable under the circumstances," and was undertaken "in conscious disregard of an excessive risk to [Plaintiff's] health." *Toguchi*, 391 at 105 (citation omitted). He has made no such showing here.

## IV. Conclusion and Order

Accordingly, because Plaintiff has failed to establish that he is likely to succeed on the merits of his Eighth Amendment claim against Dr. Santos, his Motion for Temporary Restraining Order (ECF No. 3) is **DENIED**.

**IT IS SO ORDERED**.

Dated: December 31, 2018

Hon. Barry Ted Moskowitz, Chief Judge
United States District Court