UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, CDCR #AH–1995,<br><br>Plaintiff,<br><br>vs.<br><br>Dr. MICHAEL BALBIN SANTOS, et al.,<br><br>Defendants. | Case No.: 3:18-cv-02391-BTM-WVG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. 12(b)(6)**<br><br>**[ECF No. 19]** |

Plaintiff Raul Arellano, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, filed this civil rights action ("Compl.") pursuant to 42 U.S.C. § 1983, on October 18, 2018 (ECF No. 1). Plaintiff claims Michael Balbin Santos, a doctor at RJD, violated his First and Eighth Amendment rights by initially decreasing the dosage of a medication he claims was previously prescribed to treat both his neuropathic pain and seizures, and later threatening to terminate the prescription altogether if he continued to complain. *See* Compl. at 3–4.

## I. Procedural History

Plaintiff did not pay the filing fee required by 28 U.S.C. § 1914(a) at the time of filing; instead, he filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2), together with a Motion for a Temporary Restraining Order

("TRO") (ECF No. 3). On November 28, 2018, the Court granted Plaintiff leave to proceed IFP, dismissed his claims against California Correctional Health Care Services, the California Department of Corrections and Rehabilitation, and RJD's former Warden, but ordered the U.S. Marshal to effect service upon Dr. Santos ("Defendant") pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 12(c)(3). At the same time, the Court directed the Office of the California Attorney General to respond in writing to Plaintiff's TRO (ECF No. 6). On December 12, 2018, the AG filed an Opposition, together with Santos's sworn Declaration (ECF No. 8-1), and on December 28, 2018, Plaintiff filed a Reply (ECF No. 9).

On December 31, 2018, the Court denied Plaintiff's TRO (ECF No. 10). Plaintiff's subsequent Motion seeking reconsideration of the Court's December 31, 2018 Order was also denied (ECF No. 13).

Santos then filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19). Plaintiff requested and was granted an extension of time in which to respond, and on August 19, 2019, he filed an Opposition (ECF No. 24). Santos filed no Reply.

The Court has considered Plaintiff's pleadings, as well as Defendant's Motion as submitted, and has determined no oral argument is necessary pursuant to S.D. Cal. CivLR 7.1. For the reasons explained, the Court DENIES Santos's Motion to Dismiss (ECF No. 19), and ORDERS him to file a responsive pleading pursuant to Fed. R. Civ. P. 12(a)(4)(A).

**II.     Motion to Dismiss**

    **A.     <u>Standard of Review</u>**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972). Thus, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

### B. What May be Considered

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The focus of any Rule 12(b)(6) dismissal ... is the complaint.").

"There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. Both of these procedures permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

*i. Judicial Notice*

Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b); *United States v. Ritchie*, 342 F.3d

3

903, 908–09 (9th Cir. 2003). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2); *Ritchie*, 342 F.2d at 909.

Thus, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689 (quotation marks and citation omitted). But it cannot take judicial notice of disputed facts contained in those records. *Id.*; *Khoja*, 899 F.3d at 999; *Ritchie,* 342 F.3d at 909 (refusing to take judicial notice of "[t]he underlying facts relevant to the adjudication of th[e] case" unless they "fit the requirements of Rule 201"); *see also NAC Foundation, LLC v. Jodoin*, 2017 WL 1246338, at *3 n.5 (D. Nev. March 31, 2017) (declining to take judicial notice of "declarations alleging specific statements made by [the] Defendant" pursuant to Rule 12(b)(6)); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012) (refusing to take judicial notice of a declaration submitted by investors in opposition to motion to dismiss since document was not attached to the complaint, incorporated by reference, or subject to judicial notice pursuant to Fed. R. Civ. P. 201); *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006), *aff'd in part*, 393 F. App'x 513 (9th Cir. 2010) (finding that while prisoner's medical records are matters of "public record" subject to judicial notice, it was not "appropriate for the Court to take notice of disputed matters contained within the medical records.").

### ii. *Incorporation by Reference*

Incorporation-by-reference, on the other hand, "is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. While "'the mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*," *Khoja*, 899 F.3d at 1002 (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)), a document may be incorporated by reference into a complaint, even if it is not physically attached to the complaint, if the plaintiff "refers extensively to the document or the document forms the basis of [his] claim." *Ritchie*, 342 F.3d at 908 (citing *Van Buskirk v. Cable News Network,*

4

*Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Khoja*, 899 F.3d at 1002 (noting that a document may form the basis of the plaintiff's claim where "the claim necessarily depend[s] on the [document].") (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

"Unlike judicial notice, a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Khoja*, 899 F.3d at 1003 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Ritchie*, 342 F.3d at 908)); *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.").

### III. Discussion

#### A. Defendant's Arguments

Dr. Santos seeks dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19). Specifically, Santos argues that the allegations in Plaintiff's Complaint, when considered together with the sworn Declaration and exhibits he submitted in opposition to Plaintiff's Motion for TRO (ECF No. 8-1), are insufficient to state a plausible claim for relief under either the First or the Eighth Amendments. *See* ECF No. 19-1 ("Mem. of P&As in Supp. of Mot. to Dismiss") at 7–16.

#### B. Judicial Notice of Santos' Declaration

As a preliminary matter, the Court may not weigh evidence when ruling on a Motion to Dismiss pursuant to Rule 12(b)(6), and cannot not take judicial notice of facts that are at least subject to reasonable dispute. Fed. R. Evid. 201(b); *McKinley v. Sw. Airlines Co.*, 2015 WL 2431644, at *4 (C.D. Cal. May 19, 2015), *aff'd*, 680 F. App'x 522 (9th Cir. 2017). Although it is appropriate to take judicial notice of the existence of court filings and other matters of public record, *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006), Santos here seeks to rely on his own Declaration for its truth. *See California Sportfishing Prot. All. v. Shiloh Grp., LLC,* 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) ("Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed.").

The Court is mindful of the risk that the judicial notice rule can lead to the consideration of extrinsic evidence to resolve factual disputes, which is not proper at the pleading stage. *See e.g., Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018) ("[Defendant] is not explaining or arguing the allegations in Plaintiffs' FAC—it is trying to factually rebut them. As *Khoja* makes clear, to grant the request for judicial notice would improperly convert this Rule 12(b)(6) motion into a motion for summary judgment under Rule 56."); *see also Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765, 777 (N.D. Cal. 2019). In short, "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee*, 250 F.3d at 688.

Thus, Santos's Declaration, which includes his opinions as to Plaintiff's medical needs in light of his medical history and records, the factors he claims to have considered in prescribing Plaintiff's course of treatment, the contraindications relevant to his decision to taper or discontinue Plaintiff's gabapentin dosage, and the efficacies of prescribing one drug over another may, of course, later be considered, *together with Plaintiff's evidence*, should Santos seek summary judgment. *See* Santos Decl., ECF No. 8-1, ¶¶ 2–10; Fed. R. Civ. P. 56(c). But a Defendant's request for dismissal pursuant to Rule 12(b)(6) based on either his own proffered contradictory evidence, or Plaintiff's purported *lack* of evidence with respect to the elements of either of his alleged claims, *see* Def.'s P&As in Supp. of Mot. to Dismiss at 14–16, is procedurally improper and would deny Plaintiff both the notice required by Rule 56, and a reasonable opportunity to present his own evidence in response. *See* Fed. R. Civ. P. 12(d); *Garaux v. Pulley*, 739 F.2d 437, 438 (9th Cir. 1984); *see also Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1021 & n.48 (C.D. Cal. 2015) (collecting cases in which courts "regularly declin[ed] to consider declarations and exhibits submitted in support of or in opposition to a motion to dismiss."). Where the nonmoving party is a prisoner appearing pro se, "the notice requirements of Rule 56(c) must be strictly adhered to." *Garaux*, 739 F.2d at 439-40; *see also Rand v. Rowland*, 154 F.3d 952, 953 (9th Cir. 1998) (affirming "the continued viability and

application of the 'pro se prisoner fair notice' requirement of Rule 56 … [as] adopted in *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988)).

Thus, because the "relevant facts" included in the Declaration Santos submitted in Opposition to Plaintiff's TRO include his own sworn testimony, refer the Court to portions of Plaintiff's medical records which were not incorporated by reference as part of his pleading, and are clearly in dispute, *see* Def.'s P&As in Supp. of Mot. to Dismiss at 7–10, the Court DENIES Defendant's request to take judicial notice of them pursuant to Fed. R. Civ. P. 12(b)(6), and will consider only the facts as they are alleged in Plaintiff's Complaint and incorporated Declaration in order to decide whether he has pleaded any plausible claims for relief. *See infra* n.1.

### C. **Plaintiff's Allegations**[1]

Plaintiff claims to suffer from hypertension, diabetes, epileptic seizures, and "ongoing pain" due to neuropathy and nerve damage to his head and lower back caused by an "excessive force incident" in 2010, a fall from his bunk during a seizure in 2012, and a suicide attempt in April 2018. *See* Compl. at 3; Pl.'s Decl. at 2-3. For these ailments, from 2011 through 2015, Plaintiff claims to have been prescribed Keppra and Dilantin for the seizures,[2] and various pain medications including naproxen, ibuprofen, amitriptyline, and

---

[1] Plaintiff's Complaint provides a "summary" of his claimed constitutional violations, but he expressly incorporates by reference more detailed factual allegations included in a Declaration attached to his motion for a TRO. *See* Compl. at 3 ("The 8th Amendment violation is all emphasized in the attached Declaration. Here is just a summary of the violation."); *id.* ("For the reasons above as what I wrote on Declaration is sufficient to pas[s] the level of state a claim."); *see also* Pl.'s Decl. at 2–8; 9–24. Accordingly, the Court will consider the facts alleged in Plaintiff's Declaration to determine whether he has stated a plausible claim upon which § 1983 relief may be granted. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Khoja*, 899 F.3d at 1003 ("[A] court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'") (citation omitted).

[2] According to the Physician's Desk Reference ("PDR"), Keppra is a brand name for levetiracetam. *See* https://www.pdr.net/drug-summary/Keppra-Oral-Solution-and-Tablets-levetiracetam-1054.6058 (last visited Feb. 20, 2020). It is an "oral and intravenous pyrrolidine derivative antiepileptic drug" "[u]sed for

sulindac, but he claims they caused "severe side effects" and were ineffective. *See* Pl.'s Decl. at 2.[3]

In late 2015, Plaintiff was prescribed Depakote and a "low dose" of gabapentin, which he alleges is "for both pain/seizure[s]." *Id.*[4] While he still suffered seizures in 2016, Plaintiff noticed that as "they (different doctors) increased [the] gabapentin," his seizures decreased in both frequency and severity. *Id.* By "May or so of 2017," Plaintiff was prescribed a 2700 mg dose of gabapentin, which he contends "was controlling [his]

---

the treatment of certain types of partial, myoclonic, and generalized tonic-clonic seizures," and requires "[m]onitor[ing] for emerging or worsening suicidal thoughts/behavior and depression." *Id.* Dilantin is a brand name for phenytoin sodium. It is an "[o]ral and parenteral hydantoin anticonvulsant with narrow therapeutic window; used for tonic-clonic seizures and complex partial seizures; switching dosage forms may produce significant changes in serum concentrations; close monitoring for emerging or worsening suicidal thoughts/behavior or depression is recommended." https://www.pdr.net/drug-summary/Dilantin-Capsules-phenytoin-sodium-1813 (last visited Feb. 20, 2020). The Court may take judicial notice of medical facts regarding prescription drugs, their active ingredients and effects as described in the PDR. *See United States v. Howard,* 381 F.3d 873, 880 & n.7 (9th Cir. 2004) (taking judicial notice of the narcotic effects of Percocet and Percodan noted in PDR); *see also Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) ("Well-known medical facts are the types of matters of which judicial notice may be taken.") (quoting *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 n.2 (9th Cir. 1995)).

[3] Plaintiff filed eight other civil rights actions in the Southern District of California between March 13, 2014, and the filing of this case on October 28, 2018. *See* https://pcl.uscourts.gov/pcl/pages/search/results/parties.jsf?sid=bb8b2_ef241c64377b259b64606c339dd (last visited Feb. 20, 2020). Seven of those cases remained pending at the time Plaintiff filed this action, and four of them contain Eighth Amendment inadequate medical care allegations similar to those alleged here. However, all of Plaintiff's previously filed claims arose years before the incidents at issue in this case, and all name different RJD doctors, nurses, and inmate appeals officials as Defendants. None appear duplicative of the claims Plaintiff alleges against Dr. Santos in this matter, which Plaintiff contends first arose at RJD in May or June 2018. *See* Compl. at 1, 3-4; *cf. Arellano v. Hodge, et al.,* S.D. Cal. Civil Case No. 3:14-cv-00590-JLS-JLB; *Arellano v. Sedighi, et al.*, S.D. Cal. Civil Case No. 3:15-cv-02059-AJB-BGS; *Arellano v. Melton, et al.*, 3:15-cv-02069-JAH-NLS; and *Arellano v. Dean, et al.*, 3:15-cv-02247-BEN-JLB.

[4] Depakote is the brand named for divalproex sodium. It is an "[a]nticonvulsant available orally," "[u]seful for absence, myoclonic, partial and tonic-clonic seizures; treats bipolar disorder and agitation secondary to dementia." "Close monitoring for emerging or worsening suicidal thoughts/behavior or depression is recommended." *See* https://www.pdr.net/drug-summary/Depakote-ER-divalproex-sodium-10.8467 (last visited Feb. 20, 2020). Gabapentin (brand name Neurontin) is "[u]sed for restless legs syndrome, postherpetic and other neuralgias, and adjunctively for partial seizures." Prescriptions must also be "[m]onitor[ed] for emerging or worsening suicidal thoughts or actions and/or depression." https://www.pdr.net/drug-summary/Neurontin-gabapentin-2477.4218 (last visited Feb. 20, 2020).

seizures," and he "stayed on that level for a year." *Id.*

In April 2018, Plaintiff suffered a family tragedy and attempted suicide by cutting his wrists and "throwing" himself from a bunk "head[-]first." *Id.* at 3. Plaintiff claims to have sustained a concussion, temporary blindness, and "permanent blurry vision" as a result, and was prescribed tylenol with codeine for pain while he remained in the suicidal infirmary. *Id.* After his release from the infirmary, Plaintiff was assigned to Dr. Santos. *Id.*

In May or June 2018, Plaintiff claims he told Santos of his medical and mental health history, and reported the neck and wrist injuries he had just sustained as a result of his suicide attempt were so severe they were interfering with his ability to walk, exercise, breathe, and sleep. *Id.* Plaintiff reported the gabapentin he had previously been prescribed "seem[ed] to alleviate" these issues, so he requested an increased dosage because he had developed a tolerance to it, and his other pain meds were "ineffective" and caused side effects that "put [his] health and life at risk." *Id.*

In response, Plaintiff contends Santos "said he didn't care what [Plaintiff] was going thr[ough]," and would decrease Plaintiff's dosage to 2400 mg instead. *Id.* Plaintiff further claims Santos threatened that if he complained again, he would "take them all off," because Plaintiff was a "convict" and "c[ould not] be trusted." *Id.*

Plaintiff claims his pain continued, so he filed "another medical request." *Id.* On September 25, 2018, Santos again examined him, and Plaintiff told Santos he feared the increase in pain would trigger seizures. *Id.* But Santos "took [him] off" gabapentin altogether, without a "justifiable reason," with "deliberate indifference," and without prescribing "other effective and adequate pain & seizure medication." *See* Compl. at 3; Pl.'s Decl. at 3. Plaintiff further alleges Santos "said he was taking [Plaintiff] off" the gabapentin "due to [his] submitting [a] complaint about inadequate medical treatment." *See* Compl. at 4.

Between September 25, 2018, and October 7 or 8, 2018, Plaintiff alleges to have suffered three seizures due to his "uncontrol[led] severe pain," and Santos' refusal to prescribe sufficient doses of gabapentin. *Id.* at 3; Pl.'s Decl. at 4. Another doctor named

Zhang "intervened" on October 9, 2019, and "put [him] on 900 mg [per] day of gabapentin," but Plaintiff was then referred back to Santos, his primary care doctor. *See* Pl.'s Decl. at 4.

Plaintiff again requested Santos increase his gabapentin to 2700 mg "because while [he] was on that level he never had a seizure for a year," but Santos agreed only to 1200 mg, and told Plaintiff to return in a month if his pain and seizures persisted. *Id.* When Plaintiff again objected, and complained that Santos "should [have] never taken [him] off when all [he] was asking was an upgrade" due to the severity of his overnight pain, Santos said he "had previously warn[ed] him he would be tak[ing] [him] off," "didn't care," and "was just covering himself by showing he upgraded [his] gabas from 900–1200." *Id.* When Plaintiff requested a "justifiable reason" for Santos's decision, he said "there is none, h[e's] a doctor [and] he could do it." *Id.* Plaintiff claims to have then suffered another seizure on October 11, 2018, the "night after he saw Santos," which "caused [him] to get hit on [the] back of [his] head." *Id.*

Plaintiff seeks $60,000 in damages against Santos based on alleged First and Eighth Amendment violations, injunctive relief requiring "2700 mg of gabapentin" and to be "referred to another doctor." *Id.*; Pl.'s Decl. at 3-4, 6.[5]

### D. **Eighth Amendment Claims**

First, Dr. Santos seeks dismissal of Plaintiff's Eighth Amendment claims pursuant to Fed. R. Civ. P. 12(b)(6) arguing they only "amount to a difference of opinion, and not deliberate indifference." *See* Def.'s Mem. of P&As in Supp. of Mot. to Dismiss at 12–13. The Court disagrees.[6]

---

[5] Plaintiff's requests for injunctive relief were raised in his Motion for TRO and denied on December 31, 2018. *See* ECF No. 10.

[6] The Court notes Santos's Motion to Dismiss both Plaintiff's Eighth and First Amendment claims assumes the Court would take judicial notice of the Declaration and evidence he submitted in opposition to Plaintiff's TRO. *See* Def.'s P&As in Supp. of Mot. to Dismiss at 13–16 (citing Santos Decl. ¶¶ 3, 4, 6–8, 9.) "In deciding a motion to dismiss for failure to state a claim, whether the evidence will ultimately

10

3:18-cv-02391-BTM-WVG

Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal quotation marks omitted). "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104); *see also Wilhelm v. Rotman*, 680 F.3d 1108, 1113 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

First, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), citing *Estelle*, 429 U.S. at 103–104. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 914 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1337–41 (9th Cir. 1990); *Hunt v. Dental Dept.*, 865 F.2d 198, 200–01 (9th Cir. 1989)).

Santos does not argue that Plaintiff has failed to allege facts to plausibly show his hypertension, diabetes, epileptic seizures, and neuropathic pain are objectively serious medical needs, and the Court finds his allegations sufficient to satisfy the objective

---

support the allegations is not for the Court to determine." *Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1193 n.4 (E.D. Cal. 2013). Instead, "the Court merely weighs the adequacy of the pleading[]." *Id.* (emphasis added). Thus, most of Defendant's arguments in support of dismissal are irrelevant.

component of an Eighth Amendment claim. *See e.g., Peralta v. Dillard,* 744 F.3d 1076, 1086 (9th Cir. 2014) ("We've held that the 'existence of chronic and substantial pain' indicates that a prisoner's medical needs are serious") (citing *McGuckin*, 974 F.2d at 1060); *Choquette v. DuVall,* 2017 WL 8809629, at *5 (W.D. Wash. Dec. 12, 2017) (recognizing neuropathic pain associated with multiple sclerosis is an objectively serious medical need), *report and recommendation adopted sub nom. Choquette v. Warner*, 2018 WL 834240 (W.D. Wash. Feb. 13, 2018); *Mosier v. California Dep't of Corr. & Rehab.*, 2012 WL 2577524, at *4 (E.D. Cal. July 3, 2012) (finding prisoner's allegations of "epilepsy and related seizures interfering with his daily activities sufficient to show a serious medical need satisfying the first prong of [a] deliberate indifference" claim under the Eighth Amendment).

Therefore, the Court must next decide whether Plaintiff's Complaint further contains sufficient "factual content" to plausibly allege that Santos acted with "deliberate indifference" to his needs. *McGuckin*, 914 F.2d. at 1060; *see also Jett*, 439 F.3d at 1096; *Iqbal*, 556 U.S. at 678. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To demonstrate deliberate indifference, the "plaintiff[] must show that [prison officials] were (a) subjectively aware of the serious medical need and (b) failed to adequately respond." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).

Santos rightly contends that a mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference," *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), and that disagreements between a prisoner and his treating physician as to the need to pursue one course of treatment over another fall short of meeting that standard. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989) (citing *Estelle*, 429 U.S. at 107). Instead, to sufficiently plead an Eighth Amendment violation based on "alternative courses of treatment," Plaintiff must allege facts sufficient to plausibly show that Santos's "chosen course of treatment, was "'medically unacceptable under the circumstances,' and was taken 'in conscious disregard of an excessive risk to [his] health.'" *Toguchi*, 391 F.3d

at 1058 (citations omitted).

Plaintiff claims that after a suicide attempt in April 2018, he was assigned to Dr. Santos and in May 2018 first reported difficulty walking, breathing, sleeping, and eating due to continued severe pain in his neck and wrists, and neuropathy in his feet, hands, and in the back of his head. *See* Compl. at 3; Pl.'s Decl. at 3. Plaintiff alleges to have "named all the other pain medication [he had] been on," and to have reported to Santos that these medications were either ineffective or caused side effects so severe that they "put [his] health and life at risk." *See* Pl.'s Decl. at 3. Plaintiff claims he reported to Santos that "during the hours [he] t[ook] gabapentin [his] pain seem[ed] to alleviate," but that he continued to suffer pain "during the long period of 8 p.m. to 9 a.m. which [was] when [he] was without medication." *Id.* Therefore, he requested an increased dosage of gabapentin. *Id.* But in response, and without examining him during a "2 minute visit," Plaintiff contends Dr. Santos simply replied "he didn't care what [Plaintiff] was going thr[ough]," and instead "was going to take away 300 mgs" from the 2700 mgs he had been prescribed, and threatened "if [he] complain[ed] again he w[ould] take them all off." *Id.* Plaintiff claims Santos's "reason was because [Plaintiff] was a convict" and "can't be trusted." *Id.*

It is true that a prisoner's desire for a change in his prescription or for a "superior" medication does not alone support a claim of deliberate indifference. *See Toguchi,* 391 F.3d at 1058; *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Herrera v. Beregovskays*, 2013 WL 6572585, at *3 (E.D. Cal. Dec. 13, 2013). It is also true that while a prisoner is "free to refuse specific medications or types of medication, he does not have a right to dictate what medications he will be prescribed." *Peacock v. Horowitz*, 2016 WL 3940346, at *7 (E.D. Cal. July 21, 2016) (citing *Stiltner v. Rhay*, 371 F.2d 420, 421 n.3 (9th Cir. 1967) (allegations that a prisoner feels he is not receiving the "the kind and quality of medical treatment he believes is indicated" do not "justify federal intervention."); *see also Medina v. Barenchi*, 2016 WL 7325508, at *5 (S.D. Cal. Dec. 16, 2016) (*sua sponte* dismissing Eighth Amendment claims against prison doctors pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A because "while Plaintiff obviously disagrees with Defendants' assessment of his

need for narcotics to treat his pain," dissatisfaction alone is insufficient to support a deliberate indifference claim).

Here, however, the Court finds Plaintiff's allegations cannot be fairly described as simple difference of opinion with Santos as to his preferred course of medical treatment. Instead, Plaintiff's claims and the reasonable inferences drawn from them, *Iqbal*, 556 U.S. at 678, are more "akin to cases finding deliberate indifference where prison officials and doctors deliberately ignore[] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." *Hamilton v. Endell*, 981 F.2d 1062, 1066–67 (9th Cir. 1992) (citations omitted), *abrogated in part on other grounds by Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002); *Jett*, 439 F.3d at 1097 (citations omitted); *Egberto v. Nevada Dep't of Corr.*, 678 F. App'x 500, 504 (9th Cir. 2017) (reversing summary judgment on behalf of prison officials alleged to have acted with deliberate indifference by transferring inmate on the day his MRI was scheduled in light of other evidence suggesting defendants' held a "personal animus" against him due to his disciplinary history).

Plaintiff specifically alleges that when he was first assigned to Santos's care in May or June of 2018, he was then taking a previously prescribed course of 2700 mgs per day of gabapentin, but "need[ed] an upgrade or an additional medication" to minimize both his chronic overnight pain and new injuries to his head, neck, and wrists caused by his suicide attempt just one month before. *See* Pl.'s Decl. at 3. In response, Plaintiff contends Santos instead decreased his dosage of gabapentin, which Plaintiff asserts had been prescribed to address his pain *and* to control his seizures, stated he "he didn't care what [Plaintiff] was going thr[ough]," and threatened that if Plaintiff "submit[ed] more medical forms regarding pain," or "complain[ed] again," he "w[ould] take them all off at once." *See* Compl. at 3, 4; Pl.'s Decl. at 3. Plaintiff further claims Santos's "reason was because [Plaintiff] was a convict" and "can't be trusted." *Id.*

///

These "factual matter[s], accepted as true," state an Eighth Amendment claim

14

3:18-cv-02391-BTM-WVG

against Santos that is "plausible on its face." *Iqbal*, 556 U.S. at 678. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hunt*, 865 F.2d at 201; *Estelle*, 429 U.S. at 105. In other words, *and regardless of whether Santos can offer evidence to the contrary*, if as Plaintiff alleges, Santos was aware of his medical and mental health history, claimed he "didn't care," refused to address Plaintiff's pain, denied his request for an additional or alternative pain management prescription because he was a "convict," and further threatened to cease pain medication altogether if Plaintiff continued to complain, a plausible claim of deliberate indifference exists. *See* Compl. at 3–4; Pl.'s Decl. at 2–4; *see also Colwell v. Bannister*, 763 F.3d 1060, 1069–70 (9th Cir. 2014) (finding genuine dispute as to whether prison officials acted with deliberate indifference when refusing to provide doctor-recommended cataract surgery based on prison's "one eye only" policy, and "not because non-treatment was a medically acceptable option."); *Jett*, 439 F.3d at 1097 (finding triable issue of fact as to whether doctor acted with deliberate indifference by refusing to request an orthopedic consultation based on a "competing administrative concern" that it would require referral to a non-contracted facility); *Hamilton*, 981 F.2d at 1066 (holding summary judgment on behalf of prison officials who forced inmate to fly "in contravention of his treating physician's specific orders" was inappropriate because the decision "could have constituted deliberate indifference to his medical needs."); *Snow v. McDaniel*, 681 F.3d 978, 990 (9th Cir. 2012) (finding doctor's retort of "[N]ope—gonna let you suffer until you tell me its [sic] working or not" in response to prisoner's request for additional pain medication to be a "textbook example of the state of mind required to violate the Eighth Amendment."), *overruled on other grounds by Peralta*, 744 F.3d 1076; *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (denying summary judgment where doctor's statement and nurse's notes demonstrated they were aware of detainee's pain but "withheld dental treatment for nonmedical reasons—Hartsfield's behavioral problems."); *see also Arellano v. Hodge*, 2018 WL 3618050, at *14 (S.D. Cal. July 30, 2018) (finding genuine dispute as to prisoner's Eighth Amendment deliberate indifference claims against nurse

alleged to have refused medication changes "because it would cost tax payers like her money" and finding such statements could "be reasonably interpreted as a recognition of Plaintiff's serious medical need, and a purposeful disregard of that need for non-medical reasons.").

For these reasons, Santos's Motion to Dismiss Plaintiff's Eighth Amendment inadequate medical care claims must be DENIED.

### E. Retaliation Claims

Next, Dr. Santos argues Plaintiff's retaliation claims are insufficient to state a plausible claim for relief because he has "failed to allege an adverse action," "there is no evidence of retaliatory intent," and his decision to change Plaintiff's medications "served a legitimate penological interest." *See* Def.'s Mem. of P&As in Supp. of Mot. to Dismiss at 14–16.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (citations omitted).

Adverse action taken against a prisoner "need not be an independent constitutional violation." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Id.* The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. The prisoner must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114. Finally, a prisoner successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and

capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

The Court finds Plaintiff's Complaint and Declaration "contain sufficient factual matter, accepted as true, to 'state a [retaliation] claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. First, Plaintiff alleges Santos first decreased his gabapentin "for submitting a medical request [i]n June 2018," and threatened to "take [him] off all at once" if he "submit[ted] more medical forms regarding pain." *See* Compl., at 3, 4. Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and "[a] statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed the warning." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). Thus, "the mere *threat* of harm can be adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Id.* (citing *Rhodes*, 408 F.3d at 568 n.11).

Here, Plaintiff alleges to have engaged in protected conduct, *i.e.*, to have submitted "medical forms" and "medical requests" *and* to have been chilled by Santos' warning. In fact, he expressly claims that from "June–Sept[ember] I was prevented to [sic] adequately raise my concern otherwise he [Santos] would dare carry out his threat," and that he "submitted another medical request" on September 25, 2018, only "after [he] couldn't handle the pain." *See* Compl. at 4; *Rhodes*, 408 F.3d at 568 ("[A]t the pleading stage, we have *never* required a litigant, *per impossibile*, to demonstrate a *total* chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim.") (emphasis original).

Plaintiff further contends Santos "decided to carry out his threat by taking [him] off gabapentin" all "at once." *See* Pl.'s Decl. at 3; *Deets v. Castilo*, 2010 WL 4340834, at *5 (D. Nev. Oct. 26, 2010) (finding prisoner's claims of having been denied asthma medication in retaliation for his complaints and grievances seeking asthma medication, and to have been "refused medication to manage his ongoing pain in retaliation for grievances he filed seeking medical treatment" sufficient to state a colorable First Amendment claim);

17

*Snowden v. Tate*, 2020 WL 207197, at *4 (E.D. Cal. Jan. 14, 2020) (finding prisoner's claims that defendants "stopped his pain medication and removed his 'high risk chrono'" because he filed a health care grievance sufficient to state a claim of retaliation).

Plaintiff also claims to have suffered harm that was "more than minimal." *Watison*, 668 F.3d at 1114. Specifically, he contends to have "had a total of 5 seizures" between September 25, 2018 and October 11, 2018, to have fallen in his cell, to have been "hit on [the] back of [his] head," and to have suffered "ongoing pain all day at levels 9–10" "due to [being] taken off […] gabapentin." *See* Compl. at 3; Pl.'s Decl. at 4.

Defendant Santos argues, however, that "there is no evidence" of his retaliatory intent, and that his changes to Plaintiff's pain medications served a legitimate penological purpose. *See* Def's P&As in Supp. of Mot. to Dismiss.[7] But Plaintiff need not produce *evidence* to show Santos decreased his gabapentin *because* he filed medical grievances in order to survive a motion to dismiss—he need only "plead factual content that allows the court to draw the reasonable inference" that he did. *Iqbal*, 556 U.S. at 678. "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, [the] allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114. Plaintiff here claims Santos initially decreased his gabapentin prescription "due to [him] submitting [a] complaint about inadequate medical treatment," see Compl. at 4, and warned he would terminate the medication altogether should he "complain[] again." *See* Pl.'s Decl. at 3. "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th

---

[7] In support, Santos again relies on his own Declaration to argue that Plaintiff's allegations as to his motive are "simply not true," and that he instead "acted rationally." *See* Def.'s P&As at 14, 15–16 (citing Santos's Decl., ¶¶ 4–5, 6–8.) Because Santos' Declaration is outside the pleadings and not subject to judicial notice, however, the Court again does not consider it. *See Khoja*, 899 F.3d at 1001 (noting that courts should tread carefully in judicially noticing the contents of a record to contradict the complaint's operative allegations where "there is a reasonable dispute as to what the [record] establishes."); *Rollins*, 338 F. Supp. 3d at 1031 ("Defendants repeatedly do what *Khoja* forbids – ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint.").

Cir. 1995).

And while Plaintiff bears the burden to allege that Santos' actions "did not reasonably advance a legitimate correctional goal," *Rhodes*, 408 F.3d at 567–68; *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985), he has also successfully pleaded this element by alleging, in addition to Santos's retaliatory motive, that his actions were "arbitrary and capricious." *Watison*, 668 at 1114. Specifically, Plaintiff alleges Santos reduced the medication Plaintiff claims had been effectively addressing his pain as well as the frequency and severity of his seizures for more than a year for "no justifiable reason," "because [he] was a convict," because he complained, and because he "could not be trusted." *See* Compl. at 3; Pl.'s Decl. at 3, 4. Assuming these facts true, as it must at this stage of the case, the Court finds Plaintiff's allegations sufficient to support a plausible entitlement to relief. *See Iqbal*, 556 U.S. at 678; *cf. Watison*, 668 F.3d at 1116 (finding allegations that a guard "threatened to hit [plaintiff] in the mouth for [filing] a complaint" sufficient to state a retaliation claim because "threatening to punch a prisoner serves no penological interest.").

For these reasons, Defendant's Motion to Dismiss Plaintiff's First Amendment retaliation claims must also be DENIED.

## IV. Conclusion and Order

Accordingly, the Court **DENIES** Defendant Santos' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 19] in its entirety and **ORDERS** him to file a responsive pleading pursuant to Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED**.

Dated: March 16, 2020

Honorable Barry Ted Moskowitz
United States District Judge